UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

JUN 16 2009

AT BALTIMORE
DEPUTY

EDNA GORHAM-BEY
Plaintiff,

vs.

Civil Action No. RWT 09-1166

FEDERAL BUREAU OF PRISONS
in its official capacities;

U.S. MARSHAL SERVICE
in its official capacities;

CORRECTIONS CORPERATION AMERICA
in its official capacities;

ALEXANDRIA COUNTY DETENTION CENTER
in its official capacities;

ALLEGHENY COUNTY JAIL
in its officail capacities;
Defendants.

COMPLAINT

## I.  JURISDICTION

1. This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. 1331 and 1343(a)(3).

## II.  VENUE

2. The District of Maryland is an appropriate venue under 28 U.S.C. 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.  PARTIES

3. Plaintiff Edna Gorham-Bey is currently an inmate at FMC Carswell ("the medical facility").

4. Defendant Federal Bureau of Prisons, under Texas law is responsiblbe for conditions and operations at the medical facility.

5. Defendant, U.S. Marshal Service was at sole responsibility for conditions and operations at the medical facility and or any local or county jail, with regard to plaintiff's safety, security and health.

6. Defendant Correctional Corporation of America (CCA) is under contract with defendant U.S. Marshal Service to house pre-trial/post-trial inmates, and those awaiting sentence, etc.

7. Defendant Alexandria County Detention Center (ACDC) is under contract with defendant U.S. Marshal Service to house pre-trial and pre-sentence inmates and those awaiting transport.

8. Defendant Allegheny County Jail (ACJ) is under contract with defendant U.S. Marshal Service to house pre-trial, pre-sentence and those awaiting transport to federal designation.

9. At all times relevant to the events described herein all the defendants have acted under color of federal law. Defendant FBOP continues to act under color of federal law.

10. Plaintiff was housed at the following facilities contracted by the U.S. Marshal Service prior to being transported to Federal Bureau of Prisons Medical Center (FMC Carswell):

    | | | |
    |---|---|---|
    | A. | Montgomery County Detention Center | 8/30/07/ - 9/25/07 |
    | B. | Axexandria County Detenton Center | 9/26/07 - 10/12/07 |
    | C. | Howard County Detention Center | 10/12/07 - 10/17/07 |
    | D. | Corrections Corporation of America | 10/17/07 - 2/5/08 |
    | E. | FMC Carswell (FBOP) | 02/05/08 - 05/12/08 |
    | F. | Allegheny County Jail | 05/12/08 - 03/18/09 |
    | G. | FMC Carswell (FBOP) | 03/18/09 - Present |

11. Defendants, U.S. Marshal Service with full knowledge of plaintiff's serious health issues including severe coronary artery disease, anemia and high blood pressure (medical records attached) transported plaintiff to Montgomery County Detention Center on August 30, 2007.

12. Plaintiff was quickly transferred to Clarksburg (an extension of Montgomery County Detention Center) where it was determined plaintiff's blood was severely low. On September 7, 2007, plaintiff was transported to Shady Grove Hospital where a full battery of tests, including a heart catherization was performed. This assessment revealed blockages in main arteries leading to the heart of 90-99% (See Diagram and report from Washington Adventist Hospital).

13. Plaintiff had been recommended for open heart surgery prior to trial by Cardiologist, Dr. Arnold Rosenblatt who also asked the Court not to move forward with plaintiff's trial due to her unstable condition. It was well documented that plaintiff's health would be compromised by the stress of a trial and the possibility of incarceration.

14. Officials at Montgomery County Detention Center/Clarksburg notified defendant U.S. Marshall Service of plaintiff's test results and requested plaintiff be removed from it's facility. At this point defendant U.S. Marshal Service raised their concerns with the U.S. District Court and suggested the plaintiff be released to have the surgery at her own expense. Plaintiff's counsel, with instruction from from the U.S. Attorney proposed an arrangement as follows:

    a. Plaintiff be released for 5-6 days to have surgery by a surgeon unknown to plaintiff, Dr. Rhee, without preparation or input with her cardiologist.

    b. Plaintiff was to return to the courthouse for determination as to whether she would be on home confinement or sent to another prison facility until plaintiff's sentencing date.

15. Plaintiff was released on 9/25/07 to the custody of her daughter, LaShaun Queen who took her directly to INOVA Hospital in Alexandria, Virginia. Here she met with Dr. Rhee and discussed her condition and the prognosis for the surgery. It was determined that due to the massive blood loss and lack of preparation, she was not a good candidate for open heart surgery. The effort was aborted.

16. Plaintiff returned to defendants U.S. Marshal Service on 09-26-07 at which time U.S. Marshal Chris Vogel, supervisor, expressed his frustration about plaintiff's failure to get the surgery without concern for the dangerous and life threatening position it would have placed her in. He arranged for her to be transported to Alexandria County Detention Center with knowledge that this facility was in no way adequate to care for someone in her condition.

17. Defendant Alexandria County Detention Center is an overcrowded, poorly maintained facility that houses twice as many prisoners as it was originally designed for. Plaintiff was dropped off at this jail by Deputies Brown and Nottinger who knew her condition but followed orders and directives. While in need of a blood transfusion and in a very frail state of health, plaintiff was placed in an area that was strickly used for booking and ran a 24/7 type of operation. She was placed in a cell that held up to 20 women at any given time and made to sleep on the floor even though there were open beds in the medical section of this facility. The conditions here were deplorable and inhumane as people suffering from mental illness who refused to bathe, drunks, addicts, prostitutes and women on their menstrual cycle all piled into one area that was small and unventilated. It was certainly a condition that produced cruel and unusual punishment to have people live in such an area, having to inhale body odor, the stench of people having bowel movements and serving food on unsanitized trays is beyond human capacity for pain and suffering. Plaintiff was also denied critical medication for a full week until the meds she brought with her were substitued for the generics offered at the jail. This went on for an horrific 17 days. A living nightmare!

18. Plaintiff's counsel received notice of the inhumane living condition after many days and realizing the substantial health risk plaintiff was under going had defendant U.S. Marshal Service transfer plaintiff to Howard County Detention Center, where officials determined plaintiff was in need for an immediate blood transfusion.  Defendants U.S. Marshal Service declined to approve plaintiff to be taken to the hospital at this facility.  Defendant U.S. Marshal Service at all times had full knowledge of plaintiff's condition, yet they continued to place her at substantial risk that could have proved to be fatal.

19. Plaintiff was transferred to Defendant Correctional Corporation of America on 10-17-07 where officials concurred that plaintiff was in critical need of a blood transfusion, however it took defendants U.S. Marshal Service an additional 2 days to approve the hospital trip, making the plaintiff needlessly suffer for a total of 24 days since her self surrender on September 26, 2007.  Finally on October 19, 2007, plaintiff received a blood transfusion at a non-accredited hospital (Southeast Community Hospital) and was returned to defendant CCA on October 21, 2007.

20. Defendant CCA was considerably overcrowded.  Plaintiff was forced to sleep on a top bunk despite being medically qualified for a lower bunk due to the lack of bed space.  Plaintiff's cell flooded when it rained causing hazardous condition and obstacles to plaintiff's well being.  Plaintiff complained of these conditions to officials, however they were to no avail. Plaintiff wasn't provided with so much as a mop and bucket to clean the muddy water from ehr cell and had to use blankets sheets and towels to absorb the water. While attempting to reach her top bunk, plaintiff slipped and fell in the water, injuring her hip and back ( see report).  Plaintiff was presecribed pain pills incompatable with heart medications she was taking.  Therefore, she was forced to endure the severe pain inflicted by her fall.  Conditions at CCA are inhumane and intolerable. Defendant CCA has water problems, no heat, mold in showers, roaches in food, rodents and many inmates are affected by staph infections.  Plaintiff's medical needs were severely neglected, causing plaintiff to be in need of yet another

blood transfusion on 12-11-07. Following plaintiff's 2nd transfusion, she was placed in a hospital area filled with men in which she was forced to share a bathroom with as they went to and from their appointments within the facility. As plaintiff was the only female housed in that area that several male prisoners from the CCA, she felt concern for her safety and was told "you're not moving and that's that!" This was a very humiliating experience that could have been prevented, however, disregard for plaintiff's human and civil rights allowed it to be so.

Plaintiff was sent back to her on 12-13-07 where she would soon endure the disrespect of a counselor, (Ms. Jennings) who stripped her of her religious belongs (head scarf) which violated plaintiff's constitutional rights.

21. Plaintiff was transported to defendant FMC Carswell (FBOP) on February 5, 2008 with no medical examination by defendant CCA to determine whether she was cleared to travel considering her critical battle with anemia and need for yet another blood transfusion.

22. Defendant FMC Carswell is located in Fort Worth, Texas. Nearly 2000 women are housed at Carswell in a facility designed for approximately 800. FMC Carswell is overcrowed by more than 200% which caused considerable delays in medical treatment. FMC Carswell is filled with asbestos, black mold, rust, mildew, nats, large roaches, rodents, ants and flying insects. This makes conditions at this facility severly dangerous and placing all inmates at a substantial health risk, not to mention the rampant bacteria, including staph that many of the inmates are infected with. Shortly after arrival at FMC Carswell, plaintiff suffered from extreme fatique from loss of blood, shortness of breath and chest pains. On 4-1-08 she was transported to a local hospital who refused to give her a transfusion because her blood count was a fraction of a percent too high to receive blood; her count was 8 and they said she would have to be 7. Due to her heart condition, they should have given her the blood transfusion.

   At this time plaintiff had a pending writ that she was unable to fulfill due to her medical conditions. Under FBOP policy an inmate may not travel unless he/she is medically clear, however, only one month later, plaintiff being in the same or worse medical condition was forced to travel by defendants U.S. Marshal Service and FMC Carswell, against FBOP Policy and against doctors recommendations to travel on to fulfill conditions of the writ.

23. Plaintiff was transported to defendant Allegheny County Jail in Pittsburgh, Pennsylvania on 5/12/08 where she was again was medically neglected and mistreated. On 10-16-08, plaintiff fainted and had to be given yet another blood transfusion due to inadequate medical care, after which the jail failed to properly administer her medications. Plaintiff had to resort to writing a letter seeking intervention from the FBOP. (See letter). Thereafter, plaintiff was transferred back to FMC Carswell where she continues to be subjected to inhumane living conditions, overcrowding and inadequate medical care.

### Defendants Deliberate Indifference

24. Defendant U.S. Marshal Service had full knowledge of plaintiff's serious health issues, yet they uncaringly placed plaintiff at substantial health risks on numerous occasions and deliberately went against the recommendations of medical professionals.

25. Defendant Alexandria County Jail had full knowledge of plaintiff's health and of the inhumane conditions of the facility, yet they did nothing to correct the issues and continued to place the well being and health of all inmates and particularly plaintiffs at a substantial risk.

26. Defendant FMC Carswell is by far the most out of order. It is no surprise plaintiff medical needs are prolonged and neglected here because they ahve thousands of sick women here who they are unable to care for. Judges have the misconception that this is a "real" medical facility when they designate prisoners to this facility. However, it is far from capable of providing the critical care for someone with the level of chronic health concerns that plaintiff is faced with.

27. On May 12, 2007, plaintiff was forced to fly from FMC Carswell to answer the writ with a noted blood pressure of 214/110, which was clearly outside of the FBOP Policy for travel. This was dangerously high and could have proved to be fatal.

### Inadequate Medical Care

28. Plaintiff has legitimate concerns for her life in her decision not to have open heart surgery while in prison, and has been clearly advised by Professionals (doctors) against it due to the overwhelming presence of bacterial infections, including staph, that would pose a significant barrier to the process of healing, which again, could prove to be fatal. Plaintiff's decision not to get the surgery has been used as an excuse to deny and delay much needed care and management to sustain plaintiff's life as she has come dear death on at least 3 different occasions and has sustained permanent physical injuries.

## V. CAUSES OF ACTION

30. Plaintiff support the following claims by reference to the previous paragraphs of this complaint.

## VI. PRAYER OF RELIEF

31. Plaintiff request a full investigation of all named defendants herein

32. Plaintiff requests monetary damages in the amount of Five Million dollars (5,000,000.00) with an additionall 100 dollars per day for each day plaintiff was subjected to the cruel and unusual punishment by named defendants, immediate transfer to a suitable form of penal conefinement, and any further reliefs this Court finds deemable.

Respectfully Submitted this *Eleven* day of *June* 2009

_____
Edna Gorham-Bey, Pro Se #39381-037